**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Lebeau, et al., | No. CV-23-00033-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| StarNet Insurance Company, et al., | |
| Defendants. | |

Before the Court is Defendant StarNet Insurance Company ("StarNet") and Berkley Aviation's Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. 35.) Plaintiffs Peter and Sharon Lebeau, husband and wife, and the Lebeau Trust October 2000, as assignees of StarNet's principal insureds' claims, and as holders of claims and causes of action pled here (collectively "the Lebeaus") filed a Response (Doc. 38), to which StarNet replied (Doc. 42). The Court heard oral argument on August 9, 2023. After considering the parties' arguments, the Court will grant the Motion in part, and deny in part, for the following reasons.

**I.    BACKGROUND**

All parties of this lawsuit, except Berkley Aviation, are parties to at least one of two lawsuits in Arizona arising from a plane crash in Gilbert, Arizona on September 17, 2016. On that day, the Town of Gilbert hosted its annual Constitution Week Celebration which was promoted by Constitution Week USA ("Constitution Week"). As part of the event, skydivers Jeffrey Agard, Anthony Landgren, Jennifer Pierce, and Thomas Talbott

jumped out of a plane piloted by Ryan Kilgore.  The plane and the skydivers were meant to display fireworks or pyrotechnics.  Two fireworks were inside an aluminum box mounted to the airplane's left wheel strut.  As the skydivers were preparing to jump, they ignited the mounted fireworks resulting in an explosion and fire.  The skydivers and the pilot exited the plane mid-air, and the plane ultimately crashed into the Lebeaus' home.

The Lebeaus and their property insurer, State Farm, filed separate lawsuits against Talbott, Agard, Landgren, Pierce, P&T Aerial Services, LLC, and Aerial Extreme, LLC d/b/a Arizona Skyhawks (collectively "Skydiver Parties"), the Town of Gilbert, Constitution Week, Kilgore, and others.  These suits were consolidated in *Lebeau v. Talbott, et al.*, CV2017-050130 in the Superior Court of Maricopa County ("Underlying Suit").

In the Underlying Suit, Kilgore filed a crossclaim against Talbott, and Talbott filed a counterclaim against Kilgore.  Additionally, the Skydiver Parties, the Town of Gilbert, and Kilgore sought coverage for the Underlying Suit under Commercial General Aviation Insurance Policy No. BA-16-03-00007 issued by StarNet Insurance to The Individual Members of the United States Parachute Association for the policy period March 1, 2016 to March 1, 2017 ("Policy").  The Policy provided limits of liability of $1,000,000 per occurrence and $1,000,000 in aggregate.  StarNet Insurance agreed to provide the Skydiver Parties and Kilgore's crossclaim with a defense against the Underlying Suit under the Policy.  Separately and as additional insureds, StarNet Insurance agreed to provide Constitution Week and the Town of Gilbert with an independent defense against the Underlying Suit under the Policy.  In addition to StarNet, Constitution Week's insurer, Auto-Owners Insurance Company ("Auto-Owners") is providing Constitution Week and the Town of Gilbert with a joint defense against the Underlying Suit.

On January 9, 2018, StarNet filed a complaint against the Skydiver Parties, the Town of Gilbert, Constitution Week, Kilgore, and others regarding StarNet's coverage under the Policy in *StarNet Ins. Co. v. Talbott, et al.*, No. CV2018-050052 in the Superior Court of Maricopa County ("Coverage Suit").  In the Coverage Suit complaint, StarNet

named the Lebeaus, State Farm, and Auto-Owners as interested parties. StarNet seeks declaratory judgment that the Policy does not afford coverage for the Underlying Suit, and therefore StarNet has no duty to defend or indemnify the Skydiving Parties, the Town of Gilbert, Constitution Week, or Kilgore in the Underlying Suit.

On January 7, 2020, StarNet moved for summary judgment in the Coverage Suit, which the court denied. Following this ruling, the parties in the Underlying Suit and Coverage Suit participated in an unsuccessful global mediation. The Lebeaus allege StarNet announced its settlement with State Farm on January 7, 2020. Specifically, the Lebeaus argue: "StarNet using non-admitted counsel secretly negotiated and obtained a purportedly confident settlement agreement with State Farm which depleted the policy limits available to its principal insureds from one million dollars ($1,000,000.00) to seven hundred twenty five thousand dollars ($725,000.00)." (Doc. 34 at 25 ¶ 165.) On January 6, 2021, the court in Coverage Suit stayed the proceedings pending resolution of the Underlying Suit pursuant to all the parties' stipulation.

Following a later *Morris* settlement between the Lebeaus and the Skydiver Parties, on February 23, 2022, the court in the Underlying Suit entered judgment in the Lebeaus' favor and against the Skydiver Parties in the amount of $2,510,444.86—leaving only claims between Kilgore and Talbott left.

Now, Plaintiffs' Second Amended Complaint raises numerous causes of action against StarNet arising from the Underlying Suit and Coverage Suit. These include claims for garnishment, declaratory relief, breach of contract, bad faith, aiding and abetting tortious conduct, joint and several liability, quasi estoppel, estoppel, and punitive damages.

## II.     LEGAL STANDARD

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8. If a complaint fails to state a claim for which relief can be granted, it should be dismissed. *See* Fed. R. Civ.

P. 12(b)(6). A cause of action is not properly pled "if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do"). When analyzing a complaint's sufficiency, courts must take the factual allegations as true and construe them in the light most favorable to plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). But plaintiffs must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. DISCUSSION

#### A. Shotgun Pleading

StarNet first argues that Plaintiffs' allegations regarding the bad faith claim (Count 4) and aiding and abetting tortious conduct claim (Count 6) are impermissible shotgun pleadings. As discussed, Rule 8 requires short and plain statements of the claim demonstrating plaintiff is entitled to relief. *See* Fed. R. Civ. P. 8(a). Under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed R. Civ. P. 9(b). This includes "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Furthermore, Rule 10 requires parties to state "claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Complaints violating either Rule 8(a)(2) or Rule 10(b) are often referred to as shotgun pleadings. *Physicians Care All., LLC v. All Day Beauty, LLC*, No. 2:18-CV-2602-HRH, 2019 WL 176782, at *2 (D. Ariz. Jan. 11, 2019) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)). Impermissible shotgun pleadings are those with at least one of the following: "(1) it 'contain[s] multiple

counts where each count adopts the allegations of all preceding counts,' (2) it is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action,' [and] (3) it 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[] or which of the defendants the claim is brought against.'" *Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2020 WL 4732145, at *9 (D. Ariz. Aug. 14, 2020) (quoting *Weiland*, 792 F.3d at 1321–23). As such, shotgun pleadings "incorporate 'all or nearly all' of the previous allegations and 'make no attempt to lay out which conduct constitutes the violations alleged.'" *Physicians Care All.*, 2019 WL 176782, at *2 (internal citation omitted); *but see id.* at *4–5 ("a complaint is not a shotgun pleading 'simply because it incorporates by reference previous allegations.'" (quoting *Alliance Labs, LLC v. Stratus Pharms., Inc.*, No. 2:12-cv-00927 JWS, 2013 WL 273404, at *2 (D. Ariz. Jan. 24, 2013))).

For example, courts have identified common shotgun pleadings as ones "where the plaintiff recites a collection of general allegations toward the beginning of the Complaint, and then each count incorporates every antecedent allegation by reference." *McKenna v. HP Inc.*, No. CV-21-08271-PCT-JAT, 2021 WL 5988598, at *2 (D. Ariz. Dec. 17, 2021). Most importantly, "[t]he key characteristic of a shotgun pleading is that it 'fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests,' which renders them disfavored and subject to dismissal." *Casavelli*, 2020 WL 4732145, at *9 (quoting *Weiland*, 729 F.3d at 1323).

Here, Plaintiffs' Second Amended Complaint consists of 338 paragraphs. (*See* Doc. 34.) Plaintiffs describe it as "[e]ach paragraph is expressly stated to relate to each other, it is also expressly stated that the complaint is to be read as a whole, and there are explanatory section headings which are incorporated as well." (Doc. 38 at 7.) However, shotgun pleadings are characterized as ones that "incorporate all or nearly all of the previous allegations and make no attempt to lay out which conduct constitutes the

violation alleged." *Physicians Care All., LLC*, 2019 WL 176782, at *2. Plaintiffs' Second Amended Complaint, even with numerous headings, makes no attempt to articulate which conduct is associated with each alleged cause of action.

Plaintiffs argue StarNet is on notice of the bad faith claim by citing to large portions of the Second Amended Complaint that must be read as a whole. However, no factual allegations include any mention of "bad faith." When Plaintiffs do ultimately set out Count 4, they merely state the following: (1) "StarNet breached the duty of good faith and fair dealing through actions and inactions, errors, and omissions pled here"; (2) StarNet's breach was a cause of damage to Plaintiffs and Plaintiff's assignors"; and (3) "StarNet acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure its insureds." (Doc. 34 at 41 ¶¶ 246–48.)

As written, the Court cannot determine what specific conduct or allegations Plaintiffs' bad faith claim relies upon. For this reason, the Court finds Count 4 is insufficiently pled as a shotgun pleading and shall be dismissed. *See, e.g.*, *S.E.C. v. Fraser*, No. CV-09-0043-PHX-GMS, 2010 WL 5776401, at *9 (D. Ariz. Jan. 28, 2010) ("The Fifth Claim for relief incorporates over one-hundred factual paragraphs, and it makes no attempt to lay out which conduct constitutes the violation alleged. In addition, the Fifth Claim for relief simply paraphrases the language of the statute, leaving Defendants and the Court with the task of combining the Complaint and inferring, rightly or wrongly, what specific conduct the SEC intended to assert as a violation."). Because the Court is dismissing Count 4 as a shotgun pleading, it will not address the parties' merits arguments.

The Court also finds Count 6, aiding and abetting tortious conduct, to be an impermissible shotgun pleading. Plaintiffs do not attempt to defend this claim in its Response. Count 6 alleges:
> By virtue of the conduct alleged herein including but not limited to Abuse of Process, Bad Faith and continuing Bad Faith Defendants and their agents and employees including coverage Counsel and Panel counsel intentionally

>and repeatedly assisted, aided, and abetted each other in violating Policy terms, Arizona Revised Statutes, the Arizona Administrative Code, and the Common Law causing harm to Plaintiffs and Plaintiffs assignors.

(Doc. 34 at 42 ¶ 254.)

Plaintiffs' Second Amended Complaint does not specify the factual basis for this claim, nor any specified statutes, regulations, or common law that pertains to this claim. Count 6 will thus be dismissed.

Plaintiffs request leave to amend the pleading deficiencies because this is the first Complaint attacked for pleading deficiencies, *see United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016), and deficiencies can be cured through amendment. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). StarNet does not object. The Court will grant leave to amend Counts 4 and 6.

**B.     Garnishment Claim**

StarNet moves to dismiss Plaintiffs' garnishment claim (Count 1) for being without merit and failing to comply with the requirements of Arizona's statutory scheme. Plaintiffs offer no defense in their Response. Plaintiffs seek $2,634,961.20 from StarNet, totaling the *Morris* Agreement judgment in the Underlying Suit (plus interest, attorneys' fees, and costs). Under Arizona's garnishment statutory scheme, a judgment creditor must prepare an application and bond and then submit them to the clerk of court or a justice of the peace. *See* A.R.S. §§ 12-1571–73. The clerk of court or justice of the peace then issues a writ of garnishment and summons the garnishee. A.R.S. § 12-1574. A garnishee has ten days to answer the writ. A.R.S. § 12-1578.01.

The Arizona Supreme Court has confirmed that garnishment is not in the common law, and therefore "garnishment proceedings are necessarily governed by the terms of those statutes . . . [and] courts may not allow garnishment proceedings to follow any course other than that charted by the legislature." *Benson v. Casa De Capri Enters., LLC*, 502 P.3d 461, 464 (Ariz. 2022) (quoting *Bennett Blum, M.D., Inc. v. Cowan*, 330 P.3d 961, 965 (Ariz. Ct. App. 2014)).

StarNet argues this claim must be dismissed because Plaintiffs have failed to

follow Arizona's garnishment procedure, and this Court is not the proper venue to pursue garnishment of Plaintiffs' judgment in the Underlying Suit. Plaintiffs do not defend this claim in the Response. "It is a well-settled principle that by failing to address arguments in an opposition, a party effectively concedes a claim." *Thompson v. Isagenix Int'l, LLC*, No. CV-18-04599-PHX-SPL, 2020 WL 1432840, at *4 (D. Ariz. Mar. 24, 2020). Count 1 is therefore dismissed with prejudice. The Court accordingly will not address StarNet's alternative argument for dismissing Count 1.

### C. Compulsory Counterclaims

StarNet moves to dismiss Plaintiffs' claims for breach of contract (Count 3), declaratory relief (Count 2), and estoppel (Counts 8 and 9) for failing to allege them as compulsory counterclaims in the Coverage Suit. Whether these causes of actions are compulsory counterclaims that should have been brought in the Coverage Suit is a question of state law. *See Pochiro v. Prudential 13 Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987). Pursuant to Arizona Rule of Civil Procedure 13(a): "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against the opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."

Arizona law provides that courts may consider the following four factors when determining if a claim arises out of the same transaction or occurrence: (1) whether "the issues of fact and law raised by the claim and counterclaim are largely the same"; (2) whether "[r]es judicata would bar a subsequent suit on [the] claim absent the compulsory counterclaim rule"; (3) whether "substantially the same evidence [would] support or refute" the claims; and (4) whether there is "any logical relation between the claim and the counterclaim." *Occidental Chem. Co. v. Connor*, 604 P.2d 605, 608 (Ariz. 1979). The Arizona Supreme Court has noted that Rule 13(a)'s real purpose "is to allow the court to apply the rule to any counterclaim that from an economy or efficiency perspective could be profitably tried with the main claim." *Id.* (finding the "logical

relation test" (factor 4) to be the most acceptable). Thus, the rule bars parties who fail to assert a counterclaim in one action from bringing it in a second action where the counterclaim is the basis of the complaint. *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 854–55 (9th Cir. 1981).

In the Coverage Suit, StarNet argues they are seeking a declaration the Policy does not afford coverage to the Skydiver Parties or the others for the Underlying Suit, and that StarNet has no duty to defend or indemnify the Skydiver Parties under the Policy.[1] In that case, StarNet filed their original on April 30, 2019, and the Skydiver Parties filed an answer on May 31, 2019. The Lebeaus plaintiffs filed an answer on June 15, 2018. However, the Lebeuas plaintiffs never filed an answer to StarNet's Third Amended Complaint in the Coverage Suit. Nor did any of the Coverage Suit plaintiffs allege any counterclaims against StarNet or seek to amend pleadings in the Coverage Suit. Rather, StarNet argues that Plaintiffs here "improperly filed a complaint against StarNet in a separate Arizona state court suit (removed to this Court), asserting causes of action they could have alleged in the Coverage Suit—i.e., StarNet Insurance breached the Policy and Plaintiffs are entitled to a declaration the Policy affords coverage for the Lebeaus' claims against the Skydiver Parties in the Underlying Suit." (Doc. 35 at 12.)

Specifically, StarNet contends that Plaintiffs' breach of contract and declaratory relief claims are logically connected to StarNet's claims in the Coverage Suit because here, Plaintiffs also seek the Court's determination as to whether the Policy affords coverage for the Underlying Suit. (*Compare* Doc. 34 ¶¶ 240–45, 256–315 *with* Doc. 35-1 ¶¶ 124–76.) StarNet also contends Plaintiffs' claims that StarNet is estopped from denying coverage under the Policy is also logically connected with StarNet's Coverage Suit claims and are merely defenses to those claims. For these reasons, StarNet seeks

---

[1] StarNet has attached its Third Amended Complaint in the Coverage Suit, its original complaint and the answers to the original complaint. The Court may consider these exhibits because Plaintiffs refer to the pleadings and other filings in the Coverage Suit in the Second Amended Complaint here. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain material—documents attached to the complaint, documents incorporated by reference into the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

1 dismissal of Counts 2, 3, 8, and 9 with prejudice as compulsory counterclaims that should have been alleged in the Coverage Suit. *See Occidental Chem.*, 604 P.2d at 608.

However, the Court notes that for Count 2, Plaintiffs do articulate breach of contract allegations that are unrelated to coverage. And at oral argument StarNet's counsel conceded that claims unrelated to coverage survive under the compulsory counterclaim argument, but then proposed an alternative argument for their dismissal. Counsel's alternative argument was not argued in the Motion to Dismiss and will not be considered here. The Court will thus deny StarNet's Motion as to Count 2's claims that are unrelated to coverage.

As to all remaining claims, Plaintiffs offer no substantive responses to StarNet's arguments. Instead, at the beginning of their Response Plaintiffs briefly state the following:

> 1. StarNet Contradictory positions:
>     a. Removed this action so that it could not be consolidated with their Declaratory Action and opposed remand, but now argues that Plaintiff's claims would have only been proper in state court.
>
>     b. In Opposition to Plaintiffs' Motion to Remand, StarNet claimed:
> . . . there are no, and never have been any, bad faith claims pending against StarNet Insurance—in state court in January 2018 did not, and could not, manifest an intent to proceed in state court with Plaintiffs' October 2022 bad faith complaint against StarNet . . . If Plaintiffs intend to proceed with their unfounded bad faith claim, however, it should remain under this Court's jurisdiction, as StarNet did not—and could not—waive the right to dispute Plaintiffs' new allegations of bad faith in federal court when StarNet Insurance filed a declaratory judgment suit in state court five years ago.
>
> StarNet also previously refused to reopen discovery in the stayed declaratory action while Plaintiffs informed StarNet that additional discovery would be required in light of newly matured claims.

(Doc. 38 at 2.)

The Court assumes Plaintiffs make this argument to defend the compulsory counterclaim challenge, although it is unclear. Nevertheless, Plaintiffs' cited language from a previous StarNet pleading solely discusses their position on Plaintiffs' bad faith

- 10 -

claim, which StarNet is not arguing should have been brought as a compulsory counterclaim in the Coverage Suit. Furthermore, StarNet argues in their Reply that their position has remained consistent because the Coverage Suit was properly filed in state court—Plaintiffs simply failed to timely allege any counterclaims. Moreover, StarNet contends that instead of properly filing counterclaims, Plaintiffs "improperly filed an entirely separate state court suit against StarNet arising out of the same matters at issue in the Coverage Suit" to which StarNet permissibly removed to this Court. (Doc. 42 at 5.) The Court does not find any inconsistency with StarNet's positions and this Motion.

Because Plaintiffs have failed to address or defend the substance of StarNet's arguments under these claims, the Court considers these points conceded and will dismiss with prejudice Count 2 as to any claims relating to coverage with prejudice, and Counts 3, 8, and 9 in their entirety. *Thompson*, 2020 WL 1432840, at *4.

### D. Arizona's Unfair Claims Settlement Act and Uniform Declaratory Judgment Act

Lastly, StarNet seeks dismissal of Count 5, in which Plaintiffs seek declaratory relief under Arizona's Unfair Claims Settlement Act, A.R.S. § 20-461 and the Uniform Declaratory Judgment Act, A.R.S. §§ 12-1831, et seq. In the Second Amended Complaint Plaintiffs allege that actual controversies have arisen and now exist as to whether: (1) "Plaintiff's assignors [the Skydiver Parties] had the proper knowledge, ability, and authority, under the facts as known to themselves and their counsel at the time to give valid, informed consent to the depletion of policy limits"; (2) "Plaintiff's assignors were adequately represented by Panel Counsel at various times in the [Underlying Suit]"; (3) "StarNet through its own acts or omissions or those of its agents and representatives violated one or more provisions of the guidance provided by the Arizona Fair Claims Practices Act"; and (4) "Pursuant to the Uniform Declaratory Judgment Act, A.R.S. §§ 12-1831, et seq., Plaintiffs requests a declaration of the Court regarding the rights duties and obligations of Defendants, Panel Counsel, and their agents and employees." (Doc. 34 at 42.)

For the purposes of this Motion, StarNet and the Court assume Plaintiffs are referring to Arizona's laws governing Unfair Claim Settlement Practices under A.R.S. § 20-461, seeing as there is no "Fair Claims Practices Act" in Arizona. StarNet seeks to dismiss this claim for lack of a private right of action. The statute reads: "Nothing contained in this section is intended to provide any private right or cause of action to or on behalf of any insured or uninsured resident or nonresident of this state." A.R.S. § 20-461(D). Rather, Section 461 provides an administrative remedy in which the Director of the Department of Insurance may collect civil penalties and deposit collected funds into the state general fund. *See* A.R.S. § 20-461(D)–(E); *see also Melancon v. USAA Cas. Ins. Co.*, 849 P.2d 1374, 1377 (Ariz. Ct. App. 1992) ("The Act states that its provisions do not create a private right or cause of action.").

Plaintiffs' Response concedes there is no private right of action. However, Plaintiffs contend that they are not seeking damages, but "simply asks this Court for a declaration as to whether Defendants violated one or more provisions of the Act." (Doc. 38 at 16.) In its Reply, StarNet argues that the Ninth Circuit has an instructive case in which it determined the Declaratory Judgment Act under 28 U.S.C. § 2201 "does not provide a cause of action when a party . . . lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022). The Court is unpersuaded by StarNet's argument because *Reno* discusses the federal Declaratory Judgment Act and Count 5 is brought under Arizona's Uniform Declaratory Judgment Act. Accordingly, StarNet has presented no arguments for dismissing state law declaratory relief under this claim.

Finding no private right of action, the Court will dismiss Count 5 with prejudice as to its claims under Arizona's Unfair Claims Settlement Act, A.R.S. § 20-461, but deny dismissal under Arizona's Uniform Declaratory Act, A.R.S. §§ 12-1831, et seq.

### IV. LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

the allegation of the facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up).  The Court will grant Plaintiffs leave to amend Counts 4 and 6 to cure the shotgun pleading deficiencies.  Plaintiffs' amended complaint must address the deficiencies identified above and should follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure.  Within twenty-one (21) days from the date of entry of this Order, Plaintiff may submit an amended complaint. Plaintiffs must clearly designate on the face of the document that it is the "Third Amended Complaint."  The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original Complaint by reference.

## IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** dismissing **without prejudice** Count 4 (bad faith) and Count 6 (aiding and abetting tortious conduct) and granting leave to amend within twenty-one (21) days from the date of entry of this Order.

**IT IS FURTHER ORDERED** dismissing **with prejudice** Count 1 (garnishment), Count 3 (breach of contract), Count 8 (quasi estoppel), and Count 10 (estoppel).  The Court will also dismiss **with prejudice** Count 5 (declaratory relief) only as to Plaintiffs' cause of action under Arizona's Unfair Claims Settlement Act, A.R.S. § 20-461, and Count 2 (declaratory relief) for claims relating to coverage as discussed above.

Dated this 9th day of August, 2023.

Honorable Susan M. Brnovich
United States District Judge